In the Matter of ST. ELIZABETH'S HOSPITAL, Respondent, v STATE BOARD OF PROFESSIONAL MEDICAL CONDUCT, DEPARTMENT OF HEALTH OF THE STATE OF NEW YORK, Appellant.

Third Department, January 23, 1992

APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Cynthia F. Kruesi* and *Peter H. Schiff* of counsel), for appellant.

*Mackenzie, Smith, Lewis, Michell & Hughes (Catherine A. Gale* of counsel), for respondent.

*Carter, Conboy, Bardwell, Case, Blackmore & Napierski (Susan M. Di Bella* of counsel), for Dr. BB., respondent.

*Mark Thomas* for Hospital Association of New York State, *amicus curiae.*

**OPINION OF THE COURT**

LEVINE, J.

After receiving complaints regarding Dr. BB., a physician licensed to practice medicine in this State, respondent duly issued and served upon petitioner an investigative, office subpoena duces tecum requiring production of all of petitioner's records "relating to quality assurance review of records reflecting care and treatment rendered by [Dr. BB.] to patients at [petitioner hospital]". Petitioner thereafter moved to quash the subpoena on the grounds that it was overbroad and unduly burdensome and because compulsory production of all quality assurance records regarding the physician would im-

pair the peer review process. Dr. BB. appeared by his attorneys and joined in the motion to quash the subpoena, further contending that the subpoena was invalid because it failed to show that respondent had a proper basis for issuing an investigative subpoena. Respondent cross-moved for enforcement of the subpoena.

Supreme Court granted the motion to quash on two grounds: (1) that respondent lacked statutory authority to subpoena hospital quality assurance committee records, and (2) that enforcement of the subpoena would conflict with confidentiality provisions regarding the records and proceedings of medical peer review and hospital quality assurance committees as set forth in Education Law § 6527 (3) and strengthened in the comprehensive medical malpractice reform program enacted in 1985 and 1986 (see, L 1985, ch 294, enacting, inter alia, Public Health Law § 2805-j [mandating the creation of a quality assurance committee at every hospital]; L 1986, ch 266, adding, inter alia, Public Health Law § 2805-m and amending Education Law § 6527 [3]). This appeal by respondent ensued.

As a preliminary matter, we have examined in camera the affidavit and attachments submitted by respondent regarding complaints against Dr. BB., a proper means of determining the factual justification for respondent's investigation and the relevancy of the materials sought, in view of its duty to maintain the confidentiality of reports of medical misconduct by a physician (see, Matter of Levin v Guest, 112 AD2d 830, 832, affd 67 NY2d 629, cert denied 476 US 1171). Based on our review of those submissions, we conclude that respondent has made a sufficient threshold showing to justify issuance of the office subpoena (see, Matter of Levin v Murawski, 59 NY2d 35, 41-42; Matter of Guest v Block, 134 AD2d 675, 676, lv denied 71 NY2d 801).

■ We note also that the only other objections to the subpoena contained in the submissions in support of the motion to quash were that it was overbroad and that respondent should not be afforded any access to quality assurance committee materials. Respondent obviated the first of these objections by voluntarily limiting the scope of the subpoena to documents generated by the quality assurance committee after petitioner placed Dr. BB. under review, a date ultimately fixed at July 22, 1988. Thus, the only remaining issue properly before us is whether Supreme Court was correct in ruling that any evidence gathered or produced through the activities of a

hospital quality assurance committee is statutorily off limits to respondent in investigating charges of professional misconduct against a physician. We conclude that Supreme Court erred in so ruling.

First, Supreme Court was plainly wrong in holding that respondent's power to issue a subpoena duces tecum under Public Health Law § 230 (10) (k) is totally restricted to obtaining patient records because the next succeeding paragraph grants respondent specific authority to "examine and obtain records of patients in any investigation" (Public Health Law § 230 [10] *[l]*). There is nothing in any of the statutory language of Public Health Law § 230, creating respondent as the arm of the Department of Health (hereinafter DOH) for the investigation and prosecution of professional misconduct of physicians, or in its legislative history, to indicate that the authority granted under section 230 (10) *(l)* to examine patient *records* was intended as a limitation on the general subpoena power set forth in section 230 (10) (k) to compel "persons to appear before [respondent] and be examined * * * and produce *books, papers,* records or *documents"* (emphasis supplied). Moreover, limiting respondent's subpoena power solely to obtaining patient records would severely impair the ability of respondent to perform its statutory duty to investigate and conduct disciplinary proceedings regarding all forms "of professional misconduct as defined in [Education Law §§ 6530 and 6531]" (Public Health Law § 230 [1]), including the many forms of such misconduct not directly referable to the treatment of an individual patient *(see, e.g.,* Education Law § 6530 [1], [7], [8], [10], [13]).

■ We are equally unpersuaded by Supreme Court's conclusion, urged upon us by petitioner and Dr. BB. on this appeal, that the statutory confidentiality provisions with respect to the activities of medical peer review and quality assurance committees *(see,* Education Law § 6527 [3]; Public Health Law § 2805-m) bar respondent's access to the materials generated or collected by a hospital's quality assurance committee. Education Law § 6527 (3) provides in pertinent part that: "Neither the proceedings nor the records relating to performance of a medical or a quality assurance review function or participation in a medical and dental malpractice prevention program nor any report required by [DOH] pursuant to [Public Health Law § 2805-*l*] * * * shall be subject to disclosure under [CPLR article 31] *except as hereinafter provided or as provided by any other provision of law"* (emphasis supplied). By its express

terms, the confidentiality protection under Education Law § 6527 (3) only extends to prevent disclosure in civil actions sought pursuant to the discovery article of the CPLR, not with respect to an investigation of professional misconduct by respondent under Public Health Law § 230, which has its own safeguards against disclosure comparable to the provisions of Education Law § 6527 (3) *(see,* Public Health Law § 230 [9], [11] [a]). It thus appears that the statutory power of respondent to compel disclosure in disciplinary matters is one of the exceptions to confidentiality "provided by any other provision of law", as specified by Education Law § 6527 (3) *(see, Matter of Broome County Med. Socy. v Guest,* 122 AD2d 527, 528). Moreover, when in 1986 the Legislature extended nondisclosure protection under Education Law § 6527 (3) to proceedings and records of a malpractice prevention program's quality assurance committee, such as petitioner's committee here, it extended the same protection to reports to DOH mandated by Public Health Law § 2805-*l* *(see,* L 1986, ch 266, § 36).

Public Health Law § 2805-*l* requires a hospital to report negative incidents or outcomes, such as unforeseen or unexpected patient deaths or impairments, to promptly investigate any such incident and then to send a copy of the investigative report to DOH. Education Law § 6527 (3) does not distinguish between the confidentiality accorded the proceedings or records of medical peer review committees, quality assurance committees or reports of negative patient incidents under Public Health Law § 2805-*l*. Education Law § 6527 (3), therefore, cannot reasonably be construed as a blanket preclusion of any disclosure of the enumerated categories of records, proceedings and reports to DOH sought for purposes of an investigation of professional misconduct, when one of the enumerated categories consists of investigative reports likely to be highly informative regarding possible professional misconduct that hospitals are required to furnish to DOH. For all of these reasons, we hold that respondent's subpoena was not barred by Education Law § 6527 (3) *(see, Matter of Broome County Med. Socy. v Guest, supra; see also, Matter of Axelrod [Ulster County Med. Socy.],* 99 AD2d 531).

■ Nor do we find that the disclosure of the records of the proceedings of petitioner's quality assurance committee regarding Dr. BB. is barred by any of the provisions of Public Health Law § 2805-m. Section 2805-m (1) provides that: "The information required to be collected and maintained pursuant to [Public Health Law §§ 2805-j and 2805-k and] reports re-

quired to be submitted pursuant to [Public Health Law § 2805-*l]* * * * shall be kept confidential and shall not be released *except to [DOH]* or pursuant to [Public Health Law § 2805-k (4)]" (emphasis supplied). Public Health Law § 2805-m (2) provides in pertinent part that: "none of the records, documentation or committee actions or records required pursuant to [Public Health Law §§ 2805-j and 2805-k or] the reports required pursuant to [Public Health Law § 2805-*l]* * * * shall be subject to disclosure under [Public Officers Law article 6 (Freedom of Information Law)] or [CPLR article 31], except as hereinafter provided or as provided by any other provision of law."

As Supreme Court noted, Public Health Law § 2805-m was part of a comprehensive package of medical malpractice reform legislation passed during the 1985 and 1986 legislative sessions. Public Health Law §§ 2805-j and 2805-k were enacted in 1985 *(see,* L 1985, ch 294, § 3); Public Health Law §§ 2805-*l* and 2805-m were enacted the following year *(see,* L 1986, ch 266, § 31). Section 2805-j required every hospital to institute a malpractice prevention program to be supervised by a quality assurance committee *(see,* Public Health Law § 2805-j [1] [a]). Each hospital's malpractice prevention program is required, *inter alia,* to provide for periodic and as-needed review of medical staff privileges of physicians regarding their capacity and competence to practice *(see,* Public Health Law § 2805-j [1] [b]), to have a procedure for promptly resolving patient grievances that may result in malpractice claims *(see,* Public Health Law § 2805-j [1] [d]), to collect and maintain information on the hospital's experience with negative health care outcomes and incidents, as well as patient grievances *(see,* Public Health Law § 2805-j [1] [e]), and to maintain a file of information pertinent to medical staff privilege evaluations, negative patient outcomes and patient grievances for each physician associated with the hospital *(see,* Public Health Law § 2805-j [1] [f]). The latter file of petitioner with respect to Dr. BB. was the object of respondent's subpoena. Public Health Law § 2805-k mandates a procedure of inquiry before a hospital may grant or renew privileges for a physician. That section requires any hospital in which a physician has existing privileges to furnish the file on that physician's competence to any other hospital considering granting privileges to that physician *(see,* Public Health Law § 2805-k [4]; *see also,* Note, *The 1985 Medical Malpractice Reform Act: The New York State Legislature Responds to the Medical Malpractice Crisis with a*

*Prescription for Comprehensive Reform,* 52 Brook L Rev 135, 150).

Turning, briefly, first to Public Health Law § 2805-m (2), this provision closely resembles Education Law § 6527 (3) in shielding virtually the same records, proceedings and reports from disclosure in civil actions pursuant to the discovery article of the CPLR, adding, however, a bar to disclosure under the Freedom of Information Law. Section 2805-m (2) also parallels Education Law § 6527 (3) in excepting from its protective shield those disclosures authorized or required "as provided by any other provision of law". All of the arguments and authorities we found persuasive in ruling that Education Law § 6527 (3) does not insulate petitioner's quality assurance committee records on Dr. BB. from respondent's subpoena apply with equal force to Public Health Law § 2805-m (2).

Reliance by petitioner and Dr. BB. on Public Health Law § 2805-m (1) is also misplaced. That provision expressly excepts from confidentiality the release of information "to *the department* or pursuant to [section 2805-k (4)]" (emphasis supplied). The "department" is statutorily defined as DOH *(see,* Public Health Law § 2 [1] [a]), and respondent was specifically formed as part of DOH pursuant to Public Health Law § 230 (1), which provides that "[a] state board for professional medical conduct is hereby created *in the department* in matters of professional misconduct" (emphasis supplied). Thus, the literal meaning of the statutory language exempts disclosure to respondent from the shield of confidentiality of Public Health Law § 2805-m (1).

Supreme Court ruled, however, and petitioner and Dr. BB. continue to urge on this appeal, that respondent should not be considered part of "the department" for purposes of Public Health Law § 2805-m (1) because to do so would defeat the legislative intent in strengthening the confidentiality of peer review and quality assurance committee activities under the Public Health Law, i.e., the promotion of free and open discussion and exchanges of information among health professionals at meetings of such committees. They suggest that opening the records of the proceedings of such committees to disclosure to the agency responsible for professional discipline would poison the atmosphere of committee proceedings, making them accusatorial and adversarial rather than cooperative and constructive. They urge that only by totally shielding hospital quality assurance committee records and proceedings from "outside scrutiny" can such committees effectively per-

form their function under Public Health Law § 2805-j of programmatically improving the quality of patient care and the prevention of malpractice. Thus, they urge, and Supreme Court so ruled, the exception in Public Health Law § 2805-m (1) for disclosure to "the department" should be construed as merely allowing minimal access by DOH to verify statutory compliance by a hospital with the requirements of the medical malpractice reform legislative program.

■ We disagree. First, programmatic improvements of the quality of patient care and general prevention of medical malpractice are not the sole functions of hospital quality assurance committees under the medical malpractice reform legislation. Quality assurance committees have the statutory responsibility of overseeing and coordinating a hospital's implementation of the entire legislative program. This includes instituting a program for the *identification* as well as prevention of malpractice *(see,* Public Health Law § 2805-j [1]), the elimination of incompetent or incapacitated physicians from enjoying staff privileges *(see,* Public Health Law § 2805-j [1] [b]) and insuring a hospital's compliance with its statutory duty to report medical professional misconduct *(see,* Public Health Law § 2805-j [1] [i]). The performance of these responsibilities places a quality assurance committee in no less of an adversarial or accusatorial relationship with hospital staff and professional colleagues than making its proceedings subject to disclosure to respondent.

Second, the claim of petitioner and Dr. BB. of a legislative purpose to create an impenetrable barrier protecting peer review and quality assurance committee records and proceedings from "outside scrutiny" is belied by various specific statutory provisions. Notably, another hospital considering whether to grant Dr. BB. privileges would be entitled to disclosure regarding proceedings before petitioner's quality assurance committee leading to the suspension or termination of Dr. BB.'s staff privileges, should that have occurred *(see,* Public Health Law § 2805-k [4]). Additionally, a hospital committee performing peer review functions, such as petitioner's quality assurance committee here, is required to report to respondent, through its chairperson, any and all *"information"* it receives "which reasonably appears to show that a licensee is guilty of professional misconduct" (Public Health Law § 230 [11] [a] [emphasis supplied]), when (1) any physician member of the committee is excused from individually reporting such information because it was acquired solely through

participating on the committee *(see,* Public Health Law § 230 [11] [c]), or (2) a physician having such information fulfills his or her reporting obligation by reporting the information to the committee *(see,* Public Health Law § 230 [11] [d] [ii]). Thus, acceptance of petitioner's and Dr. BB.'s contention, that under Public Health Law § 2805-m (1) "information required to be collected and maintained pursuant to [Public Health Law §§ 2805-j and 2805-k]" is statutorily immune from disclosure to respondent, would place that section in direct conflict with Public Health Law § 230 (11) when, for example, a peer committee receives evidence reflecting professional misconduct of a physician in connection with a patient grievance *(see,* Public Health Law § 2805-j [1] [d]) or a negative patient health care outcome or incident *(see,* Public Health Law § 2805-j [1] [e]).

 Finally, the legislative history of the 1986 malpractice reform enactment adding Public Health Law § 2805-m and amending Education Law § 6527 (3) does not support petitioner's and Dr. BB.'s construction of Public Health Law § 2805-m (1) as barring disclosure of information to respondent for purposes of investigating professional misconduct. Petitioner and Dr. BB. cite to a phrase in the Governor's program bill memorandum for Laws of 1986 (ch 266), stating that one of the purposes of the bill was to "strengthen and expand existing confidentiality and immunity provisions" (Exec Dept mem, 1986 NY Legis Ann, at 160). However, the phrase relied on comes from a sentence which states in its entirety that: "To ensure that physicians and other health care providers and institutions are not deterred from participating in quality assurance, *incident reporting* and peer review programs or from *complying with misconduct reporting requirements,* the bill would strengthen and expand existing confidentiality and immunity provisions affecting such activities" (Exec Dept mem, 1986 NY Legis Ann, at 160 [emphasis supplied]). The express purpose to encourage, *inter alia,* "incident reporting" and "misconduct reporting" through strengthening statutory confidentiality and immunity provisions, and the objective also expressed in the same memorandum to make the professional disciplinary process more effective *(see,* Exec Dept mem, 1986 NY Legis Ann, at 160), hardly support an expansive construction of Public Health Law § 2805-m (1) barring respondent's access to any information generated through the various functions of a hospital quality assurance committee, no matter how directly relevant to establishing professional misconduct.

The confidentiality amendments are properly seen as aimed at prevention of disclosure to private litigants or the public at large *(see, Matter of Albany Med. Center Hosp. v Denis,* 161 AD2d 1030; *Lenard v New York Univ. Med. Center,* 83 AD2d 860; *see also,* Burrows, *Incident Reporting: A Hospital's Conflicting Obligations Resolved,* 58 NY St B J 10, 13-15 [Oct. 1986]).

For all the foregoing reasons, we find no basis to depart from the literal statutory language of the Public Health Law as the true expression of legislative intent, under which disclosure to respondent of quality assurance committee materials falls within the exception to confidentiality provided by Public Health Law § 2805-m (1) for disclosures to DOH *(see, Matter of Capital Newspapers v Whalen,* 69 NY2d 246, 251-252). Accordingly, Supreme Court's order granting petitioner's motion to quash should be reversed.

MIKOLL, YESAWICH JR., CREW III and CASEY, JJ., concur.

Ordered that the order is reversed, on the law, without costs, petitioner's motion to quash the subpoena duces tecum denied and respondent's cross motion to enforce said subpoena granted.