OPINION OF THE COURT
Peter Tom, J.
In this motion, petitioner Robert C. Atkins (Atkins), a physician, seeks to challenge the authority of the New York State Board for Professional Medical Conduct (the Board) to subpoena the file and records of one of his patients being treated by a controversial modality of treatment which allegedly controls and confines the spread of cancer.
The modality of treatment, which is the subject of this controversy, is known as "ozone therapy.” Petitioner alleges that ozone, a naturally occurring substance, is a powerful oxidative agent that is bacteriocidal and virocidal, and when introduced into the body is useful in the management and control of cancer. Petitioner asserts that ozone therapy is not taught in United States medical schools and is not available in United States hospitals, but is widely used in Germany, where it was discovered and developed. The ozone therapy protocols used by petitioner were allegedly developed by Dr. Rudy Falk, the former head of oncological surgery at Toronto General Hospital.
The within proceeding concerns the records of a certain patient of Atkins who shall be referred to herein as "Jane Doe” or the "Patient”. Although the Patient appears to have impliedly waived her right to confidentiality as set forth in Public Health Law § 230 (10) (l) by providing an affidavit in support of Atkins’ petition, this court chooses to refer to her anonymously. Jane Doe was originally diagnosed with breast cancer in 1986 and subsequently underwent a left mastectomy. The Patient thereafter endured six months of chemotherapy and, since her surgery, regularly sees Dr. Ronald A. Primus, an oncologist. Jane Doe maintains that she was cancer-free for approximately four years until in or around December 1990 when Dr. Primus informed her that a blood test indicated the presence of cancer cells.
It is at this juncture that Jane Doe began to use Atkins who commenced the ozone therapy and concomitant nutritional guidelines. The Patient contends that she also continued to see Dr. Primus on Atkins’ advice.
*428 On or about September 14, 1992, during her second ozone treatment, Jane Doe felt weak and, after being observed for approximately four hours by Atkins and his staff, was sent to New York Hospital and was thereafter transferred to the emergency room of Jacobi Hospital. The Patient was, inter alla, treated in a hyperbaric chamber and was eventually released with no apparent side effects or injuries. The hyperbaric chamber is more commonly known as the decompression chamber, and is most often used to treat scuba divers suffering from the "bends,” which is the presence of nitrogen in the blood stream (Merck Manual, at 2381 [15th ed 1987]).
On or about September 15, 1992, the Board, through the Office of Professional Medical Conduct (OPMC) received a complaint concerning Atkins’ therapy from an emergency room doctor who had treated Jane Doe. Respondent maintains that on September 22, 1992, an internal committee on professional conduct met to review the complaint and determined, inter alla, that: the complaint was authentic; an investigation was warranted; and subpoenas should be issued to aid the investigation. On or about January 13, 1993, a subpoena (the Subpoena) was issued and served on Atkins the following day. The Subpoena sought the production by Atkins of Jane Doe’s entire file, including medical records and correspondence, or legible, certified photocopies of the same.
Prior to the issuance of the Subpoena, Frank McKeon (McKeon), the Senior Medical Conduct Investigator of OPMC, by letter dated December 14, 1992, requested literature on ozone therapy from a Dr. Fischer, apparently a member of Atkins’ staff. By letter dated February 3, 1993, petitioner’s attorney advised McKeon that he had defended a doctor using ozone therapy in a prior investigation brought by OPMC and that after an investigation, the case had been closed without further action. Petitioner’s attorney advised McKeon to access the reference materials from the prior case. In a separate letter dated February 3, 1993, petitioner requested the withdrawal of the Subpoena, which was promptly denied by letter dated February 4, 1993. This proceeding followed.
Petitioner seeks in this motion, an order: quashing the subpoena duces tecum issued by respondent dated January 13, 1993 and compelling respondent to produce the complaint filed against him. Respondent cross-moves to enforce the Subpoena.
Atkins, a licensed physician in the State of New York, is a self-described "leading medical author, lecturer and radio *429 host” with a medical practice estimated at over 5,000 patients. Petitioner claims to be one of the leading proponents of alternative medicine in the United States, which recognizes the limits of conventional medicine for treating cancer and other degenerative diseases through harsh drugs and invasive surgery, and the need for alternative methods of treatment. One such alternative method utilized by Atkins is ozone therapy.
In the instant motion, Atkins argues that respondent has failed to establish the minimum threshold requirement for the issuance of the Subpoena pursuant to the Public Health Law and that his patient who is not the complaining party has specifically asked not to permit respondent access to her personal medical records. Petitioner maintains that the mere fact that he utilizes ozone therapy is legally insufficient for OPMC to obtain the patient’s medical records and that the patient’s statutorily guaranteed confidentiality of her treatment with the doctor of her choice must be considered. In this motion, Atkins also seeks an order directing the release of the complaint made by the emergency room doctor on the ground that the cloak of confidentiality of the report has been waived since the complaining doctor has publicized in the press his news about Dr. Atkins and his controversial medical therapy.
The Board, through OPMC, is a State agency vested with the authority and responsibility to investigate professional misconduct against physicians. The Board is empowered to bring charges, subpoena records, hold hearings and discipline physicians (Public Health Law §§ 230, 230-a).
The power to issue subpoenas in aid of an investigation of professional misconduct is granted to the Board by Public Health Law § 230 (10) (k) and (l) which state, inter alia:
"The executive secretary of the board with the specific approval of a committee on professional conduct of the board shall have the power to issue subpoenas requiring persons to appear before the board and be examined with reference to a matter within the scope of the inquiry * * *
"The board or its representatives may examine and obtain records of patients in any investigation or proceeding by the board acting within the scope of its authorization. Unless expressly waived by the patient, any information so obtained shall be confidential and shall not be disclosed except to the extent necessary for the proper function of the board” (emphasis added).
*430 In Matter of Levin v Murawski (59 NY2d 35, 41), the Court of Appeals held that:
"To warrant the issue of a subpoena in furtherance of an investigation, undertaken in consequence of receipt of a complaint or otherwise * * * there must be a showing that there exists 'some basis for inquisitorial action’.
"What is required when investigation is triggered by receipt of a complaint is a threshold showing of the authenticity of the complaint as warranting investigation, not a threshold substantiation of the charges made in the complaint * * * the disclosure compelled by a subpoena is ordered in aid of investigation of the merits of the charges.” (Emphasis added.) (See also, Matter of Lepley v State of N. Y. Dept. of Health, Off. of Professional Med. Conduct, 190 AD2d 556; Matter of St. Elizabeth’s Hosp. v State Bd. of Professional Med. Conduct, 174 AD2d 225; Doe v Office of Professional Med. Conduct, 161 AD2d 123, lv denied 77 NY2d 801; Matter of Levin v Guest, 112 AD2d 830, affd 67 NY2d 629, cert denied 476 US 1171; Matter of Alter v New York State Dept. of Health, State Bd. for Professional Med. Conduct, 145 Misc 2d 393.)
In an endeavor to establish the foregoing threshold, respondent submits an in camera affidavit, along with supporting documentation including hospital records, from Paul Stein, Esq. (Stein), an associate counsel in the New York State Department of Health’s Division of Legal Affairs.
The petitioner objects to the in camera submission on the grounds that such a submission is not warranted under the within circumstances. This court disagrees.
As the Appellate Division, First Department, noted in Matter of Levin v Guest (supra), since the Board is under an obligation to maintain the confidentiality of complaints it receives pursuant to Public Health Law § 230 (11) (a), this is precisely the type of situation in which an in camera proceeding applies. (Supra, at 832; see also, Matter of Lepley v State of N. Y. Dept. of Health, Off. of Professional Med. Conduct, supra, at 557; Matter of Alter v New York State Dept. of Health, State Bd. for Professional Med. Conduct, supra, at 395.)
The court is aware that in this proceeding certain unusual factors exist; that the Patient willingly revealed her name in an affidavit submitted in support of Dr. Atkins’ petition to quash the subpoena; and that the emergency room doctor who treated the Patient and made the complaint spoke openly and *431 at length to the media concerning his treatment of the Patient and his characterization of ozone therapy as "quackery.” Further, the doctor apparently made no attempt to conceal his identity. The foregoing, however, in this court’s view, does not justify the public release of the Patient’s hospital records, the complaint by the complaining doctor or a laundry list of treatments the Patient received.
A review of the in camera submissions made by respondent makes it clear that there exists a threshold showing warranting the issuance of the Subpoena.
The petitioner’s argument that the Subpoena should be quashed because an earlier OPMC investigation of another physician using ozone therapy was terminated is without merit as, i.e., it is unknown if the treatments used were identical, or even similar, or what similarities or differences existed in the administration of those treatments. As noted earlier, petitioner claims to utilize ozone therapy protocols developed by Dr. Rudy Falk, a Canadian physician. It is not known, or discussed, what protocols were used by the anonymous doctor in the former investigation. In addition, the petitioner’s assertion that he cannot legally be found negligent or incompetent is, at this juncture, best left up to the Board.
Petitioner argues that the rights of the Patient, and the confidentiality of the physician-patient relationship, should act as a bar to the release of the Patient’s records to the Board. The Patient states: "I unequivocally and categorically reject any attempt by the State to gain access to my privileged and confidential medical records.”
In reviewing the legislative history of Public Health Law § 230, it is clear that the Legislature took note of the fact that the Board, during the first year of its existence, was frustrated in its ability to properly conduct investigations of physicians due to the unavailability of facts. The Board was therefore given subpoena power specifically designed to override the physician-patient privilege for the limited purpose of carrying out the Board’s function and otherwise protected the confidentiality of that relationship. The public policy at the root of the bill was to prevent a physician from causing, engaging in or maintaining a condition or activity which constitutes an imminent danger to the health of the people. (See, Mem of Assemblyman Hevesi, L 1977, ch 773,1977 NY Legis Ann, at 256.)
As noted by the Court of Appeals in Dillenbeck v Hess (73 *432 NY2d 278), the physician-patient privilege, codified in CPLR 4504, is "entirely a creature of statute” (supra, at 283), which has a public policy basis grounded in general concerns for privacy as well as specific concerns for bodily integrity found in constitutional, statutory and common-law doctrines. The Court also noted that New York became the first State to adopt the physician-patient privilege by statute in 1828 (Dillenbeck v Hess, supra, at 284).
However, there are exceptions. In Matter of Camperlengo v Blum (56 NY2d 251, 255), the Court of Appeals held: "Although the privilege serves an important social function, in certain instances the Legislature has abrogated this privilege to effectuate some other public policy, such as the detection and prevention of child abuse (Family Ct Act, § 1046, subd a, par [vii]) or the treatment of narcotic addiction (Public Health Law, § 3373).” (Emphasis added.) (See also, Matter of Doe v Kuriansky, 91 AD2d 1068, affd 59 NY2d 836; Alexander, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C4504:4, at 634; 5 Weinstein-Korn-Miller, NY Civ Prac If If 4504.11, 4504.12, 4504.13.)
The language of Public Health Law § 230 (10) (l) leaves little doubt of the Legislature’s intention: "The board or its representatives may examine and obtain records of patients in any investigation or proceeding by the board” (emphasis added).
Further, in Matter of Levin v Murawski (59 NY2d 35, 40, supra), the Court of Appeals expressly held that once the Board has established the minimum threshold foundation necessary for the issuance of a subpoena, the physician-patient relationship is overridden, at least to the extent that the State may obtain a patient’s records.
The overriding legislative intent of Public Health Law § 230 to promote and protect public health, and the statutory provision which guarantees confidentiality, permits OPMC to subpoena medical records of a physician under investigation without impinging upon the patient’s constitutional rights despite claims that it invaded the patient’s right of privileged confidentiality to receive a particular medical treatment and from a physician of her choice. (See, Schachter v Whalen, 581 F2d 35.)
In view of all of the foregoing, this court concludes that despite the Patient’s assertion of the physician-patient privilege, the Subpoena should stand.
In addition, that branch of the petition which seeks the *433 release of the complaint made to the Board is denied. The petitioner requests the complaint so that it may be used as a basis for an action in defamation, but both the release of the complaint, and its admission in any administrative or judicial proceeding, are prohibited by Public Health Law § 230 (11) (a).
Accordingly, the petition is denied. Respondent’s cross motion is granted and petitioner is directed to comply with the Subpoena within 30 days of the service of a copy of this judgment with notice of entry.