No. 74,494

In the Matter of MICHAEL R. MCINTOSH, *Respondent*.
(912 P.2d 182)

Opinion filed March 8, 1996.

*Stanton A. Hazlett*, chief deputy disciplinary administrator, argued the cause, and *Bruce E. Miller*, disciplinary administrator, and *Marty M. Snyder*, deputy disciplinary administrator, were with him on the formal complaint for petitioner.

*John H. Fields*, of Kansas City, argued the cause for respondent.

*Per Curiam:* This is an original attorney discipline proceeding filed by the office of the Disciplinary Administrator against Michael R. McIntosh, of Kansas City, Kansas, an attorney admitted to the practice of law in Kansas. The complaint filed in case No. B5721 was heard before a panel of the Kansas Board for the Discipline of Attorneys. The panel found:

Count I: Violation of MRPC 1.15(b) (1995 Kan. Ct. R. Annot. 294).

Count II: No violation.

Count III: Violation of Supreme Court Rule 207 (1995 Kan. Ct. R. Annot. 202).

The panel recommended the discipline of published censure. Respondent has filed no exceptions. The Disciplinary Administrator appeals and takes exception to the panel's finding that the Disciplinary Administrator's office had failed to establish the violation alleged in Count II by clear and convincing evidence.

We shall first dispose of a jurisdictional issue raised by the respondent. Supreme Court Rule 211(f) (1995 Kan. Ct. R. Annot. 211) provides in pertinent part:

"If the final hearing report does not recommend discipline, and the Disciplinary Administrator does not appeal therefrom, the report shall be filed with the secretary of the Board and with the Disciplinary Administrator.

*"If the final hearing report or reports do not recommend discipline, or if the complaint is dismissed by the panel or if the panel recommends discipline other than as set forth in Rule 203(a)(1), (2), (3), or (5) an appeal may be taken by the Disciplinary Administrator to the Supreme Court for final disposition.* The appellate procedure shall be as provided in Rule 212(b).

"If the final hearing report recommends discipline as prescribed by Rule 203(a)(1), (2), (3), or (5) or if the Disciplinary Administrator appeals from other action taken as set forth in the preceding paragraph, the report, findings, and recommendations of the panel together with the complaint, answer, and transcript, if any, shall be filed with the Clerk of the Appellate Courts and the matter shall proceed as provided by Rule 212." (Emphasis supplied.)

The respondent argues the rule does not authorize the Disciplinary Administrator to appeal from the dismissal of only one count of a multi-count complaint. Respondent cites no authority for his position, and we find no merit therein. Each count in a complaint is a separate charge which must be proven by clear and convincing evidence. The Disciplinary Administrator's right of appeal under Supreme Court Rule 211(f) is unaffected by whether the dismissal of a charge occurred in a single count complaint or was one count of a multi-count complaint.

We turn now to the merits of the matter herein.

## COUNT I

The disciplinary panel's findings of fact relative to Count I are as follows:

"1. Michael R. McIntosh, is an attorney at law, Kansas Attorney Registration No. 10552. His last registration address with the Clerk of the Appellate Courts of Kansas is 1999 North 77th Street, Kansas City, Kansas 66112.

"2. Although respondent did not have an attorney trust account in 1992, he did have a law office account at Douglas Bank in Kansas City, Kansas, and a business account called Fortex Industries at the Commerce Bank in Kansas City, Missouri.

"3. Fortex Industries is a distributing company that sells caps and T-shirts through convenience stores. It is not related to respondent's law practice.

"4. On or about July 22, 1991, Barbara Hill and her daughter, Kimberly Hill, were injured in an automobile accident in Kansas City, Kansas. Barbara Hill is respondent's secretary. Respondent neither charged Barbara Hill nor her daughter for representing them in their claim against the driver who caused the collision.

"5. Kansas Farm Bureau Insurance Company (KFB) was Barbara Hill's PIP carrier and it paid certain PIP benefits to both Barbara Hill and Kimberly Hill.

"6. Respondent agreed to protect KFB PIP liens.

"7. The claims of Barbara Hill and Kimberly Hill were settled at different times. Barbara Hill's claim was settled for $7,750 on or about February 24, 1992. Kimberly Hill's claim was settled for $10,000 on or about June 1, 1992.

"8. Both settlement drafts were made payable to the respective clients, respondent and KFB . . . KFB had a lien in the Barbara Hill settlement for $2,325.98 and a lien in the Kimberly Hill settlement for $2,009.70.

"9. On February 24, 1992, respondent notified Wanda Asafaylo of KFB that the Barbara Hill claim would be settling soon and that KFB's name would be on the settlement draft. He also inquired as to the amount of KFB's lien. . . .

"10. On February 25, 1992, respondent obtained KFB's endorsement, through Wanda Asafaylo, on the Barbara Hill settlement draft. In exchange for KFB's endorsement, respondent left a check, made payable to KFB, for $2,325.98. The check was drawn on his law office account.

"11. Respondent explained to Wanda Asafaylo that his check for $2,325.98 would not be honored by his bank and asked her to hold the check until he replaced it with either a cashier's check or cash. KFB later deposited the check and the check was returned to KFB because of insufficient funds.

"12. Barbara Hill knew respondent was having financial problems. And she told respondent that he could use the money from her settlement until another case settled.

"13. After obtaining Barbara Hill's endorsement on the settlement draft, respondent deposited $2,650 of the draft in the Fortex account and he took the remaining $5,100 in cash. Although respondent testified that he gave Barbara Hill sufficient cash to pick up his law office account check for $2,325.98, she failed to do so. On the other hand, Barbara Hill testified that she did not remember respondent asking her to pay the PIP lien.

"14. When respondent received the settlement proceeds from another case, he repaid Barbara Hill with a cashier's check for $5,700, which amount was slightly more than the $5,424.02 that he had borrowed. . . .

"15. Sometime after June 1, 1992, respondent received a $10,000 settlement draft for the Kimberly Hill claim. Previously, Kimberly Hill told respondent she wanted cash to purchase a car and to move. Consequently, respondent arranged to pay her in cash.

"16. After Kimberly Hill endorsed the settlement draft and got her money, respondent took it to KFB to obtain its endorsement. Again, Wanda Asafaylo endorsed the draft for KFB. . . . In exchange for KFB's endorsement, respon-

dent left a check, made payable to KFB, for $2,009.70. The check was drawn on his Fortex account. . . .

"17. Again, respondent explained to Wanda Asafaylo that his check for $2,009.70 would not be honored by his bank and asked her to hold the check until he replaced it with either a cashier's check or cash.

"18. On June 12, 1992, respondent deposited $8,500 of the $10,000 settlement draft in his Fortex account and took $1,500 in cash. Respondent testified that he gave Barbara Hill money to pick up the Fortex check at KFB, but she failed to do so. But Barbara Hill testified that she did not remember respondent asking her to pay the PIP lien.

"19. KFB held the Fortex check until June 30, 1992, when it was deposited without further notice to respondent. . . . This check, like the earlier law office account check, was returned because of insufficient funds.

"20. KFB wrote a letter to respondent concerning the first insufficient fund check on May 27, 1992, and a letter to Fortex concerning the second insufficient fund check on July 15, 1992. . . . Neither respondent nor his secretary remember receiving these letters because respondent's law office had previously moved on January 25, 1992, and the letters were addressed to the old office address.

"21. Respondent claims he first learned that his office account check had been deposited and returned for insufficient funds during an office conference he had with two employees of KFB, Scott Campbell and Kevin Brening, on May 5, 1993. . . .

"22. Respondent asked for a couple of weeks to pick up the office account check and he did so on May 19, 1993. . . .

"23. Approximately a week later, Campbell and Brening became aware that respondent was the responsible party for the Fortex check as well. Respondent was contacted on May 25, 1993, and on the same day he picked up the Fortex check."

## The panel then concluded:

"Respondent's handling of the insurance drafts settling the Barbara Hill and Kimberly Hill personal injury matters violated MRPC 1.15.

"MRPC 1.15(b) requires that '[u]pon receiving funds or property in which a . . . third person has an interest, a lawyer shall promptly notify the . . . third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the . . . third person any funds or other property that the . . . third person is entitled to receive. . . .'

."Here, approximately 11 months had elapsed after the settlement of the Kimberly Hill case and approximately 14 months had elapsed after the settlement of the Barbara Hill case before KFB received its funds from respondent. Clearly, respondent's payment to KFB failed to meet the [promptness] requirement of MRPC 1.15(b)."

No exceptions have been filed relative to Count I. The panel's conclusions are amply supported by its findings of fact.

## COUNT II

In this count, respondent was charged with violation of MRPC 1.15(a) and (d) which provide:

"(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state of Kansas. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

. . . .

"(d) Preserving identity of funds and property of a client.
(1) All funds of clients paid to a lawyer or law firm, including advances for costs and expenses, shall be deposited in one or more identifiable accounts maintained in the state of Kansas with a federal or state chartered or licensed financial institution and insured by an agency of the federal or state government, and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
(i) Funds reasonably sufficient to pay bank charges may be deposited therein.
(ii) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved."

## The panel found and concluded relative to Count II:

"Respondent had established an arrangement with Commerce Bank to immediately furnish him cashier's checks for his clients' portions of settlement proceeds. Respondent's practice was to present a properly endorsed settlement draft to Commerce Bank. Respondent would then obtain and deliver to his client either a cashier's check or cash representing the client's portion of the settlement. And then respondent would either deposit the balance representing his fee or take it in cash.

. . . .

"We conclude clear and convincing evidence is lacking to establish that respondent deposited clients' money into his Fortex account in violation of MRPC 1.15."

It should be noted that this count alleged specific instances involving particular settlement checks and clients. The checks and events involved in Count I were not included in Count II.

The Disciplinary Administrator filed exceptions to and appeals from the panel's findings and conclusions. Whereas respondent's cash method of transacting business is not to be condoned, the record supports the panel's determination that the Disciplinary Administrator's office had not established by clear and convincing evidence the alleged violation of depositing clients' money into the Fortex account. The clients were paid in cash or by cashier's check prior to the time the check was deposited into the Fortex account. No evidence was presented that any of the alleged transactions resulted in a client's funds being placed in the Fortex account, which was essential to any finding of violation in this count under the specific wording of the complaint. We find no merit in the Disciplinary Administrator's appeal of the panel's determinations relative to this count.

## COUNT III.

As to Count III, the panel held there was clear and convincing evidence to establish the following findings of fact:

"1. The complaint in this matter was docketed on June 1, 1993. Respondent was notified of the complaint on June 8, 1993. Karen Shelor, of the Wyandotte County Ethics Committee, was appointed to investigate the complaint.

"2. Respondent was interviewed by Shelor on July 22, 1993, at her office. At that meeting, Shelor asked respondent for bank records from the Commerce Bank in Kansas City, Missouri, and the Douglas Bank in Kansas City, Kansas.

"3. Later, Shelor requested assistance from the Disciplinary Administrator's office in obtaining the bank records. In response to that request for assistance, the Disciplinary Administrator sent respondent a letter on August 2, 1993, explaining that the Disciplinary Administrator did not have subpoena power in the state of Missouri. Included in that letter was an authorization which would allow the Disciplinary Administrator's office to obtain respondent's bank records at the Commerce Bank in Kansas City, Missouri. The letter explained that if respondent failed to sign the authorization, this would be considered as a failure to cooperate with the investigation of this matter under Supreme Court Rule 207. . . . The letter requested that the authorization be signed and sent back within five days of receipt of the letter. Although respondent admits he received the letter and the authorization, he failed to sign the authorization.

"4. Shelor was able to obtain the Douglas Bank records because that bank was located in Kansas and the subpoena issued to that bank was honored. Shelor, however, was unable to obtain the Commerce Bank records, because respondent failed to sign the previously mentioned authorization. Shelor again contacted the Disciplinary Administrator, who then appointed John Badgerow, an attorney with both a Missouri and Kansas license, as an additional investigator in this matter. Badgerow brought an action to obtain the records in Jackson County, Missouri. A deposition of a Commerce bank official was set up for September 24, 1993. Respondent notified the attorney for Commerce Bank that he objected to the turning over of his bank records to Badgerow. But respondent did not appear and the records were delivered to Badgerow on that date by Commerce Bank. Badgerow later mailed the records to the Disciplinary Administrator on or about September 30, 1993. But respondent appeared at the Disciplinary Administrator's office and produced the requested records for his Commerce bank account on September 24, 1993.

"5. Once the Commerce Bank records were obtained, they were reviewed by Jack Ford, an investigator in the Disciplinary Administrator's office. After reviewing the records, Ford sent a letter dated February 8, 1994, to respondent requesting information about the account at Commerce Bank (the Fortex account). . . . Ford requested that respondent furnish the requested information to him within 15 days of the date of the letter. . . . No response was received from the respondent and on June 17, 1994, an investigative subpoena duces tecum was sent to respondent because of his failure to respond to the February 8, 1994, letter. Respondent requested until July 5, 1994, to respond to the subpoena. Although respondent was given additional time to furnish the requested information in the subpoena, the information was never provided. . . ."

The panel then concluded:

"Supreme Court Rule 207 makes it mandatory for a respondent to furnish information in connection with the investigation of a docketed disciplinary complaint. The previously mentioned actions of respondent constituted a lack of cooperation in investigating this disciplinary complaint."

No exceptions have been filed relative to Count III. The panel's conclusion is supported by its findings of fact.

## RECOMMENDED DISCIPLINE

For aggravating factors, the panel found respondent had previously been censured for a Supreme Court Rule 207 violation but that the complaints in the two cases were contemporaneous in time. Specifically, the panel found there was no bad faith obstruction of the proceedings. As for mitigating circumstances, the panel

found, *inter alia*, no dishonest or selfish motive was involved, respondent had been through a divorce, respondent has now opened an appropriate trust account, and respondent was remorseful. The panel then recommended the discipline of published censure. We accept the panel's findings, conclusions, and recommended discipline.

IT IS THEREFORE ORDERED that Michael R. McIntosh be censured in accordance with Supreme Court Rule 203(a)(3) (1995 Kan. Ct. R. Annot. 191) for his violations of MRPC 1.15(b) and Supreme Court Rule 207.

IT IS FURTHER ORDERED that this order shall be published in the official Kansas Reports and that the costs herein be assessed to respondent.