Phyllis Gilmore Executive Director Behavioral Sciences Regulatory Board 712 S.W. Kansas Avenue Topeka, Kansas 66603
Dear Mrs. Gilmore:
As Executive Director of the Behavioral Sciences Regulatory Board, you pose a number of questions that pertain to the Board's investigative subpoena authority in relation to various confidential and privileged communications laws. Because our response is fairly lengthy, we are dividing our opinion into three sections.
 Part I
In your first set of questions, you ask:
 "1. (a) What is the applicability of the Kansas psychologist/client confidential and privileged communications laws to the Board's authority to issue an investigative subpoena for psychological records of a client that are maintained by a psychologist who is not the subject of a Board investigation?
 "(b) What is the applicability of the Kansas psychologist/client confidential and privileged communications laws to the Board's authority to issue an investigative subpoena for psychological records of a psychologist's client when that psychologist is under investigation in relation to a different
client?
 "(c) If such records are subject to the Board's investigative subpoena power, what is the effect on a psychologist's obligation to fully inform a client of potential disclosures of client records?"
 The Board's Investigative Subpoena Authority
The underlying purpose of the Regulation of Psychologists Act[1] is to afford protection to members of the public against unscrupulous, immoral or incompetent psychologists.[2] To carry out this purpose the Board is explicitly authorized to "suspend, limit or revoke" a psychologist's license for committing statutorily prohibited acts.[3]
Investigative authority is thus necessarily implied in order for the Board to determine whether to proceed with formal disciplinary action.[4]
An investigation may be initiated based on a complaint from a psychologist's client, or based on information from a variety of other sources such as a client's family member or friend, a psychologist's colleague or employee, an insurance company, a law enforcement agency, a professional association, a newspaper article, or court records.[5] "An investigation is not a statutory violation or disciplinary action; it is used to determine if one has occurred and the other is necessary."[6]
To conduct a thorough investigation, the Board may need to obtain client records or other documents maintained by a psychologist.
The 2001 Kansas Legislature amended the Behavioral Sciences Regulatory Board's previous subpoena authority statute[7] to clarify that the Board's subpoena power extends to investigative subpoenas, to provide for a subpoena challenge process, and to provide for confidentiality of investigative documents. Sections of the current statute pertinent to our inquiry state:
 "(a) In connection with any investigation, based upon a written complaint or other reasonably reliable written information, by the behavioral sciences regulatory board, the board or its duly authorized agents or employees shall at all reasonable times have access to, for the purpose of examination, and the right to copy any document, report, record or other physical evidence of any person being investigated, or any document, report, record or other evidence maintained by and in possession of any clinic or office of a practitioner of the behavioral sciences, or other public or private agency if such document, report, record or other physical evidence relates to practices which may be grounds for disciplinary action.
 "(b) . . . For the purpose of all investigations and proceedings conducted by the behavioral sciences regulatory board:
 "(1) The board may issue subpoenas compelling . . . the production for examination or copying of documents, reports, records or any other physical evidence if such documents, reports, records or other physical evidence relate to practices which may be grounds for disciplinary action. . . ."[8]
Upon a timely objection to the subpoena, the Board is authorized to revoke, limit or modify the subpoena if the documents sought:
 • do not relate to practices that may be grounds for disciplinary action,
 • are not relevant to the allegation that is the subject matter of the proceeding or investigation, or
 • do not describe the documents required to be produced with sufficient particularity.[9]
If dissatisfied with the Board's determination, the person on whom a subpoena is served may apply to the appropriate district court for relief. The district court may then revoke, limit or modify the subpoena if any of the objections described above are established to the satisfaction of the court.[10]
Documents relating to a complaint that are received, obtained or maintained by the Board are confidential and not subject to disclosure in a manner that identifies or enables identification of the person who is the subject or source of the information, with three specified exceptions.[11]
The final provision of the subpoena law that is of interest in relation to our inquiry provides:
 "Nothing in this section or any other provision of law making communications between a practitioner of one of the behavioral sciences and the practitioner's client or patient a privileged or confidential communication shall apply to investigations or proceedings conducted pursuant to this section."[12]
This subpoena authority statute was drawn from a Kansas Healing Arts Act statute[13] that has been in effect for 25 years. Since that statute's enactment in 1986, no case requesting interpretation or parameters has been presented to the Kansas Court of Appeals or Kansas Supreme Court. However, numerous reported Kansas cases have established general principles of law concerning investigative subpoenas issued by administrative agencies. The rules of law that these cases set forth were summarized by the Kansas Supreme Court:
 "The law refuses to apply the stringent relevancy requirements of subpoenas in aid of civil or criminal litigation to administrative agency subpoenas. To uphold a subpoena on the ground of relevancy the law requires only that the inquiry be one which the administrative agency demanding production is authorized to make, that the demand be not too indefinite, and that the information sought be reasonably relevant.
 "Where there is a possibility of relevancy in documents subpoenaed and there is no showing that the subpoena is unreasonable or oppressive the statutes granting the power to subpoena should be liberally construed to permit inquiry.
 "Administrative subpoenas which have previously been condemned as `fishing expeditions' are now permitted, and administrative subpoenas may be enforced for investigative purposes unless they are plainly incompetent or irrelevant to any lawful purpose.
 "A district court has power to modify a subpoena duces tecum issued by [an administrative agency] and thus remove any objectionable features from it while preserving the remainder."[14]
These cases, the Court noted, indicate more "relaxed" standards of relevancy in the context of administrative investigations as compared to the "stringent" relevancy requirement established in the Code of Civil Procedure for purposes of litigation.[15] However, the Court was quick to remind that although a statute granting investigative subpoena power to an administrative agency must be construed liberally, this was not to say that the agency "has unlimited subpoena powers and can subject an entire facility to demands or whims without some showing of relevancy to the investigation."[16] Further, the Court stated, the formerly condemned but now permitted "fishing expedition" does not mean an agency "may throw its line in just anybody's pond without some minimal justification or expectation that there may be some fish in the pond."[17]
In our opinion, the Board's investigative subpoena power comports with these principles of law. Initially, authority to issue any investigative subpoena is triggered only by Board receipt of a written complaint or other reasonably reliable written information. The statute authorizing the Board to issue an investigative subpoena then limits the Board to seeking documents that relate to practices which may be grounds for disciplinary action, i.e. an inquiry that the Board is authorized to make. Further, any documents sought must be described with sufficient particularity and must be reasonably relevant to the allegation that is the subject matter of the investigation.
 Confidential and Privileged Communications
The statutory basis for confidential and privileged communications between a psychologist and client is as follows:
 "(a) The confidential relations and communications between a licensed psychologist and the psychologist's client are placed on the same basis as provided by law for those between an attorney and the attorney's client. Except as provided in subsection (b), nothing in this act shall be construed to require such privileged communications to be disclosed.
 (b) Nothing in this section or in this act shall be construed to prohibit any licensed psychologist from testifying in court hearings concerning matters of adult abuse, adoption, child abuse, child neglect, or other matters pertaining to the welfare of children or from seeking collaboration or consultation with professional colleagues or administrative superiors, or both, on behalf of a client. There is no privilege under this section for information which is required to be reported to a public official."[18]
As recognized by the Kansas Supreme Court: "Although it is somewhat difficult to equate the attorney-client and psychologist-patient relationship, that is what K.S.A. 1986 Supp. 74-5323 [the psychologist-client confidentiality and privileged communications statute] requires."[19] Thus, because the confidential and privileged communications between a psychologist and client is "placed on the same basis as provided by law for those between an attorney and the attorney's client," initially we must explore the attorney-client basis, which is actually two bases. The principle of confidentiality in relation to an attorney and client is given effect in two separate but related bodies of law: the rule of confidentiality established by the Kansas Supreme Court in professional ethics rules and the attorney-client privilege established in the law of evidence.
The rule of lawyer-client confidentiality covers not merely matters communicated in confidence by the client, but all information relating to the representation, whatever its source. This rule, which is applicable in all situations other than judicial or administrative quasi-judicial proceedings, is codified in Kansas Supreme Court Rule 1.6, Confidentiality of Information.[20]
Rule 1.6 provides:
 "(a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraph (b).
 "(b) A lawyer may reveal such information to the extent the lawyer reasonably believes necessary:
"(1) to prevent the client from committing a crime; or
 "(2) to comply with requirements of law or orders of any tribunal; or
 "(3) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client." (Emphasis added.)
Additionally, by authorizing the Disciplinary Administrator[21] to issue investigative subpoenas, Kansas Supreme Court Rule 216 implicitly authorizes lawyers to disclose otherwise confidential information to the Disciplinary Administrator for investigative purposes.
The second basis of confidentiality is codified in K.S.A. 60-426, the attorney-client privilege statute within the Kansas Code of Evidence.[22]
This testimonial privilege applies in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client.[23]
This opinion will address only the Board's investigative subpoena authority and not subpoena authority in relation to Board disciplinary proceedings. Thus, only the lawyer-client confidentiality rule, Rule 1.6, as applied to psychologists, will be addressed and not the testimonial lawyer-client privilege, K.S.A. 60-426, as applied to psychologists.
As seen from Rule 1.6, a psychologist's duty to maintain confidentiality of information relating to the provision of psychological services to a client is not absolute. While Kansas Supreme Court Rule 1.6, as applied to a psychologist establishes a duty to maintain confidentiality, a psychologist may disclose client information in three specified circumstances, including to comply with requirements of law or orders of any tribunal. Under Rule 1.6, a lawyer served with a Disciplinary Administrator-issued investigative subpoena is permitted to disclose information relating to representation of a client in order to comply with the investigative subpoena requirement of Rule 205. Likewise, a psychologist served with a Board-issued investigative subpoena is permitted to disclose client information in order to comply with the investigative subpoena requirement of K.S.A. 74-7508, as amended by L. 2001, Ch. 154, § 1. This result is confirmed by the express language in the Board's investigative subpoena power statute that nothing in any other provision of law making communications between a psychologist and the psychologist's client a privileged or confidential communication shall apply to investigations of the Board. Additionally, we note that a lawfully issued subpoena may be considered an order of a tribunal,[24] providing additional authority that permits a psychologist to disclose otherwise confidential information.
We also note that failure of an attorney to comply with a Disciplinary Administrator-issued investigative subpoena establishes an independent ground for disciplinary action: lack of cooperation in the investigation of a disciplinary complaint.[25] Likewise with psychologists, "refusing to cooperate in a timely manner with the board's investigation of complaints" is unprofessional conduct[26] and failure to comply with a Board-issued investigative subpoena would establish an independent disciplinary ground. Under this section of the unprofessional conduct regulation, a psychologist is bound to comply with a requirement of law,i.e. cooperate in a timely manner with a Board investigation. Thus, this unprofessional conduct provision establishes another basis under Rule 1.6 as applied to psychologists that allows a psychologist to disclose client information pursuant to a Board-issued subpoena.
In relation to an optometrist who failed to cooperate with a Board request to furnish information, the Kansas Supreme Court favorably quoted from an Oregon case:
 "[Oregon law] specifies that a failure to cooperate with a Board investigation in exactly the way that petitioner did is a ground for revocation. Had the legislature not so provided and had it created only `substantive' grounds for revocation, the Board's ability to revoke a license would often be dependent on the outcome of an investigation that the licensee could impede or prevent."[27]
The Supreme Court of Rhode Island artfully expressed the public policy supporting disclosure of otherwise confidential patient records pursuant to a licensing board's investigation.
 "By establishing the Board of Medical Review and authorizing it to investigate charges of unprofessional conduct against physicians, the Legislature manifested a desire to improve the quality of health-care services rendered in this state and to maintain a standard of professional ethics. By enacting the Confidentiality of Health Care Information Act, the Legislature has sought to encourage open disclosure of information from patient to physician so as to aid in the effective treatment of the patient. However, when a physician is under investigation for unprofessional conduct and the physician attempts to invoke the patient-physician privilege and to prevent the investigatory committee from obtaining records necessary to its investigation, it seems apparent that the injury to society's interest in integrity within the medical profession is much greater than the injury done to the patient's interest in the privacy of his medical records. A physician under investigation for his professional misconduct subverts rather than supports the rights of the patient by distorting the patient's privilege to serve his own ends."[28]
The New York Supreme Court has also articulated public policy reasons that support the supremacy of a medical board's investigative subpoena over patient confidentiality:
 "In reviewing the legislative history of Public Health Law § 230, it is clear that the Legislature took note of the fact that the Board, during the first year of its existence, was frustrated in its ability to properly conduct investigations of physicians due to the unavailability of facts. The Board was therefore given subpoena power specifically designed to override the physician-patient privilege for the limited purpose of carrying out the Board's function and otherwise protected the confidentiality of that relationship. The public policy at the root of the bill was to prevent a physician from causing, engaging in or maintaining a condition or activity which constitutes an imminent danger to the health of the people."[29]
Through the 2001 amendments to K.S.A. 74-7508, the Kansas Legislature affirmed the overriding value of protecting the public from "unscrupulous, immoral or incompetent" psychologists by explicitly providing the Board with investigative subpoena authority that overrides a client's interest in the confidentiality of records maintained by a psychologist. This was accomplished in a manner that would, however, protect the records from further disclosure absent narrowly defined exceptions.
 Records of a Psychologist Not Under Investigation, or Under Investigation in Relation to a Different Client
As discussed, a Board-issued investigative subpoena must comply with specified criteria:
 (1) The subpoenaed records must be sought in connection with a Board investigation;
 (2) the investigation must have been initiated by a written complaint or other reasonably reliable written information;
 (3) the subpoenaed records must relate to practices that may be grounds for disciplinary action, i.e. those grounds specified in K.S.A. 74-5324;
 (4) the subpoenaed records must be relevant to the allegation that is the subject matter of the investigation;
 (5) the subpoenaed records must be described with sufficient particularity.
However, neither the Board's investigative subpoena power statute, nor court established principles of law concerning administrative agency investigative subpoenas, restrict the issuance of an investigative subpoena only to client records maintained by a psychologist who is the subject of the investigation or to records of a psychologist who is the subject of a Board investigation in relation to only one client. In response to the specific questions you ask, assuming the above-described statutory criteria are met, the Board is authorized to issue an investigative subpoena for psychological records (1) of a client that are maintained by a psychologist who is not the subject of a Board investigation and (2) of a psychologist's client when that psychologist is under investigation in relation to a different client.
Some examples from other states whose courts have addressed these issues illustrate the application of a licensing board's investigative subpoena authority in relation to client confidentiality under statutes similar to those in Kansas and in circumstances pertinent to your inquiries.
(1) Marsha sought the professional services of psychologist Hines. Eventually they married. At this point Marsha engaged psychologist Guenthers as her personal counselor. The Iowa Board of Psychology Examiners received a complaint regarding Hines. The gist of the complaint concerned some alleged conduct between Marsha and Hines during their psychologist-patient relationship. Marsha was not the source of the complaint. The Board subpoenaed and received Hines' clinical records concerning Marsha. The Board then subpoenaed Guenthers' clinical records concerning Marsha. Guenthers moved to quash the subpoena and the case ended up before the Iowa Supreme Court. Under an Iowa statute that is comparable to the Kansas Board's investigative subpoena statute, the Court determined:
 "[T]he investigative subpoena statute authorizes the board to issue a subpoena to compel production of professional records in the custody of any mental health professional. The district court correctly determined that the subpoena power of the board was statutorily broad enough to reach Marsha's professional records in Guenthers' possession."[30]
(2) In connection with an investigation of a psychiatrist for professional misconduct, the licensing board issued subpoenas to another psychiatrist and a psychologist who subsequently treated the patient. The patient did not initiate the investigation and strenuously objected to any disclosure of her patient records. The case reached the New York Supreme Court which first noted the Board's threefold burden: authority, relevancy and some basis for inquisitorial action. The Court next noted that patient confidentiality did not act as an absolute bar to the Board's acquisition of patient records. However, the Court went on:
 "Whether this authorization extends to the patient and office records of a subsequent treating physician or psychologist is a much closer question. In such instances, the issues of relevancy and basis become much more pronounced. Particularly where the patient objects, any analysis must balance the patient's right to further confidential relationships with a treating psychiatrist or psychologist. Especially when the complaint is filed by a third party, an investigation should not operate to deprive an innocent party from the statutorily guaranteed confidentiality of his or her treatment with the person of his or her choice. In such instances, the burden upon the Board becomes increasingly manifest."[31]
The Court concluded that under the circumstances of that case:
 "[T]he Board had not established any relevancy other than what must be categorized as a fishing expedition in an attempt to possibly link these treatments to some undesignated and ill-defined continuing breach of professional ethics, the relevancy of which is suspect at best."[32]
(3) The New York state medical licensing board initiated an investigation into a doctor's professional conduct, specifically with regard to information it had received which suggesting that he was practicing medicine either with gross incompetence or with negligence on more than one occasion. The Board requested and received from the doctor patient records pertaining to the patient who had lodged the initial complaint. After receiving additional information on other patients from a hospital, the board subpoenaed additional patient records from the doctor. He refused to comply with the subpoena. On appeal the doctor argued that the Board was only authorized to pursue an investigation of his treatment of the complaining patient. The Court, however, said:
 "There is no statutory requirement that an investigation be limited to the facts set forth in a complaint. Facts supporting the validity of the complaint may be independently supplied. Nor is the Board limited to an investigation of the specifics of a single complaint of professional misconduct once professional misconduct has been reported. . . . It is irrelevant whether a single complaint or report, or several such complaints, sparked the investigation as long as the Board can make a sufficient threshold showing that the initial complaint had sufficient merit to warrant further investigation into the physician's professional conduct."[33]
As these example cases demonstrate, the facts and circumstances of a particular case will determine the outcome of any challenged Board-issued investigative subpoena. Consequently, before issuing an investigative subpoena, the Board should make every effort to ensure that applicable grounds for disciplinary action are identified, the client records sought are relevant to the inquiry and are described with sufficient particularity. We also note that upon a court challenge to a Board-issued investigative subpoena on the basis of relevancy, an in camera inspection by the court may be appropriate.[34]
 Informed Consent to Release of Client Information
The third part of your first set of questions implies that a psychologist has a duty to fully inform a client of any potential disclosures of the client's records. While this may be a laudable endeavor, we cannot discern that such a duty has been established either by the Regulation of Psychologists Act or by Kansas case law.
As indicated, the Board is authorized to take disciplinary action against a psychologist who violates specified statutory provisions.[35]
One of the provisions permits disciplinary action if a psychologist "has been guilty of unprofessional conduct as defined by rules and regulations established by the board."[36] The only section of the unprofessional conduct regulation that is applicable to the issue of informed consent provides:
 "The following acts shall be evidence of unprofessional conduct: failing to obtain written, informed consent from a client or patient, or the client's or patient's legal representative or representatives, . . . before releasing information to a third party concerning the client or patient, except as required by law."[37]
This regulation requires a psychologist to obtain a client's knowing consent in writing before disclosing information about the client to a third party unless a provision of law requires the psychologist to disclose the information. A statutorily authorized investigative subpoena issued by the Board that directs a psychologist to produce client records would clearly fall within the "required by law" provision. Thus a psychologist is not required to obtain a client's written, informed consent prior to disclosing client records in response to a Board issued investigative subpoena.
 Part 2 Confidentiality of Alcohol and Drug Abuse Patient Records
You next ask:
 "2. What is the applicability of the federal confidentiality regulation, 42 C.F.R. Part 2, to the Board's authority to issue an investigative subpoena for substance abuse records of a patient that are maintained by a covered substance abuse treatment facility?"
Under the authority of the federal Public Health Service Act,[38]
regulations were adopted concerning the confidentiality of alcohol and drug abuse patient records.[39] The purpose of the regulations is to impose restrictions upon the disclosure and use of alcohol and drug abuse patient records which are maintained in connection with performance of any federally assisted alcohol and drug abuse program.[40] The patient records to which the regulations apply may be disclosed or used only as permitted by the regulations.[41] The regulations provide for disclosure of patient information with the patient's written consent,[42] as well as for disclosure without the patient's consent in specified circumstances.[43] Additionally, and of interest in relation to your question, the regulations provide for court orders authorizing disclosure and use of otherwise confidential drug and alcohol patient records.[44]
The regulation explains that such an order of a court is a unique kind of court order whose only purpose is to authorize a disclosure or use of patient information which would otherwise be prohibited. Further, such a court order by itself does not compel disclosure unless accompanied by a subpoena or other similar legal mandate.[45] Procedures and criteria for obtaining an order authorizing disclosure and use of records for investigative or prosecutorial purposes are established:
 "An order authorizing the disclosure or use of patient records to criminally or administratively investigate
or prosecute a program, a person holding the records (or employees or agents of the program or person) may be applied for by any administrative, regulatory, supervisory, investigative, law enforcement or prosecutorial agency having jurisdiction over the program's or person's activities."[46]
A disclosure order is warranted only if the court determines that good cause exists. To make that determination, the court must find that:
 "(1) Other ways of obtaining the information are not available or would not be effective; and
 "(2) the public interest and need for the disclosure outweigh the potential injury to the patient, the physician-patient relationship and the treatment services."[47]
Assuming, therefore, that the Board makes the appropriate application before a court of competent jurisdiction for a disclosure order, the court finds good cause for such an order, and a Board-issued subpoena complies with statutory requirements regarding grounds for disciplinary action, relevancy and particularity, the Board would be able to access drug or alcohol abuse patient records maintained in a federally assisted drug or alcohol abuse program.[48]
 Part 3 Standards for Privacy of Individually Identifiable Health Information
Your final question is:
 "3. What is the applicability of the federal Standards for Privacy of Individually Identifiable Health Information, 45 C.F.R. Parts 160 through 164 (adopted pursuant to the federal Health Insurance Portability and Accountability Act of 1996) to the Board's authority to issue an investigative subpoena for records maintained by a covered health care provider?"
Pursuant to the authority granted by the Health Insurance Portability and Accountability Act of 1996, the Health Care Financing Administration, a division of the Department of Health and Human Services, issued final regulations related to the security and privacy of health care information.[49] Although the regulations became effective April 16, 2001, the Department of Health and Human Services has given health care providers two years to achieve compliance.
The obligations of these broad regulations apply to covered entities: "health plans, health care clearinghouses, and health care providers"[50]
who transmit health information in electronic form in connection with certain transactions.[51] Health care includes "preventive, diagnostic, therapeutic, rehabilitative, maintenance, or palliative care, and counseling, service, assessment or procedure with respect to the physical or mental condition or functional status of an individual or that affects the structure or function of the body."[52] A psychologist is clearly considered a covered health care provider.
The general privacy rule established by these regulations provides that "a covered entity may not use or disclose protected health information, except as permitted or required" by the regulations.[53] Six general categories of permitted uses and disclosures are specified: (1) to the individual, (2) with a consent that complies with specified requirements, (3) without consent under certain conditions, except with respect to psychotherapy notes, (4) with an authorization that complies with specified requirements, (5) pursuant to an agreement as specified by the regulations and (6) as permitted by and in compliance with the section titled "Uses and disclosures for which consent, an authorization, or opportunity to agree or object is not required."[54]
It is this last disclosure category with which we are concerned.
In a number of situations a health provider may use and/or disclose health information without consent, without authorization and without opportunity for the individual to agree or object. One of those situations pertains to disclosures for judicial and administrative proceedings, either in response to a court or administrative tribunal order or in response to a subpoena, discovery request or other lawful process.[55]
Disclosure pursuant to a subpoena is authorized only if the subpoena is accompanied by satisfactory assurance that reasonable efforts have been made (1) to provide notice to the individual whose records are sought or (2) to secure a qualified protective order. The regulation specifies in detail what those reasonable efforts are required to entail.[56]
Psychotherapy notes fall within the category of records that generally may be used or disclosed only if an authorization containing specified core elements has been obtained. However, there are exceptions to this general rule, including a use or disclosure that is permitted if required by law.[57] In that event, a health care provider may disclose protected health information to the extent that such disclosure complies with and is limited to the relevant requirements of such law.[58]
 "Required by law means a mandate contained in law that compels a covered entity to make a use or disclosure of protected health information and that is enforceable in a court of law. Required by law
includes, but is not limited to . . . subpoenas . . . issued by . . . an administrative body authorized to require the production of information; . . . or an authorized investigative demand . . . ."[59]
Assuming, therefore, that the Board complies with requirements of 42 C.F.R. § 512.164(e) regarding notice or attempt to secure a qualified protective order and a Board-issued subpoena complies with statutory requirements regarding grounds for disciplinary action, relevancy and particularity, the Board would be able to access health information records, including psychotherapy notes, concerning an individual that are maintained by a health care provider, such as a psychologist.
 Conclusion
In conclusion, the Behavioral Sciences Regulatory Board's investigative subpoena power comports with established principles of law as determined by the Kansas Supreme Court. Initially, authority to issue any investigative subpoena is triggered only by Board receipt of a written complaint or other reasonably reliable written information. The statute authorizing the Board to issue an investigative subpoena then limits the Board to seeking documents that relate to practices which may be grounds for disciplinary action, i.e. an inquiry that the Board is authorized to make. Further, any documents sought must be described with sufficient particularity and must be reasonably relevant to the allegation that is the subject matter of the investigation.
Through its 2001 amendments to the Board's subpoena authority statute, the Kansas Legislature affirmed the overriding value of protecting the public from "unscrupulous, immoral or incompetent" psychologists by explicitly providing the Board with investigative subpoena authority that overrides a client's interest in the confidentiality of records maintained by a psychologist. This was accomplished in a manner that would, however, protect the records from further disclosure absent narrowly defined exceptions.
Assuming statutory requirements regarding grounds for disciplinary action, relevancy and particularity are met, the Board is authorized to issue an investigative subpoena for psychological records (1) of a client that are maintained by a psychologist who is not the subject of a Board investigation and (2) of a psychologist's client when that psychologist is under investigation in relation to a different client. A psychologist is not required to obtain a client's written, informed consent prior to disclosing client records in response to a Board-issued investigative subpoena.
Assuming that the Board makes the appropriate application before a court of competent jurisdiction for a disclosure order, the court finds good cause for such an order, and a Board-issued subpoena complies with statutory requirements regarding grounds for disciplinary action, relevancy and particularity, the Board would be able to access drug or alcohol abuse patient records maintained in a federally assisted drug or alcohol abuse program.
Assuming that the Board complies with requirements of 42 C.F.R. § 512.164(e) regarding notice and an attempt to secure a qualified protective order and a Board-issued subpoena complies with statutory requirements regarding grounds for disciplinary action, relevancy and particularity, the Board would be able to access health information records, including psychotherapy notes, concerning an individual that are maintained by a health care provider, such as a psychologist.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Camille Nohe Assistant Attorney General
CJS:JLM:CN:jm
 ATTACHMENT A
K.S.A. 60-426. Lawyer-client privilege. (a) Subject to K.S.A. 60-437, and except as otherwise provided by subsection (b) of this section communications found by the judge to have been between lawyer and his or her client in the course of that relationship and in professional confidence, are privileged, and a client has a privilege (1) if he or she is the witness to refuse to disclose any such communication, and (2) to prevent his or her lawyer from disclosing it, and (3) to prevent any other witness from disclosing such communication if it came to the knowledge of such witness (i) in the course of its transmittal between the client and the lawyer, or (ii) in a manner not reasonably to be anticipated by the client, or (iii) as a result of a breach of the lawyer-client relationship. The privilege may be claimed by the client in person or by his or her lawyer, or if an incapacitated person, by either his or her guardian or conservator, or if deceased, by his or her personal representative. (b) Exceptions. Such privileges shall not extend (1) to a communication if the judge finds that sufficient evidence, aside from the communication, has been introduced to warrant a finding that the legal service was sought or obtained in order to enable or aid the commission or planning of a crime or a tort, or (2) to a communication relevant to an issue between parties all of whom claim through the client, regardless of whether the respective claims are by testate or intestate succession or by inter vivos transaction, or (3) to a communication relevant to an issue of breach of duty by the lawyer to his or her client, or by the client to his or her lawyer, or (4) to a communication relevant to an issue concerning an attested document of which the lawyer is an attesting witness, or (5) to a communication relevant to a matter of common interest between two or more clients if made by any of them to a lawyer whom they have retained in common when offered in an action between any of such clients.
(b) Exceptions. Such privileges shall not extend (1) to a communication if the judge finds that sufficient evidence, aside from the communication, has been introduced to warrant a finding that the legal service was sought or obtained in order to enable or aid the commission or planning of a crime or a tort, or (2) to a communication relevant to an issue between parties all of whom claim through the client, regardless of whether the respective claims are by testate or intestate succession or by inter vivos transaction, or (3) to a communication relevant to an issue of breach of duty by the lawyer to his or her client, or by the client to his or her lawyer, or (4) to a communication relevant to an issue concerning an attested document of which the lawyer is an attesting witness, or (5) to a communication relevant to a matter of common interest between two or more clients if made by any of them to a lawyer whom they have retained in common when offered in an action between any of such clients.
(c) Definitions. As used in this section (1) "client" means a person or corporation or other association that, directly or through an authorized representative, consults a lawyer or lawyer's representative for the purpose of retaining the lawyer or securing legal service or advice from the lawyer in his or her professional capacity; and includes an incapacitated person who, or whose guardian on behalf of the incapacitated person so consults the lawyer or the lawyer's representative in behalf of the incapacitated person; (2) "communication" includes advice given by the lawyer in the course of representing the client and includes disclosures of the client to a representative, associate or employee of the lawyer incidental to the professional relationship; (3) "lawyer" means a person authorized, or reasonably believed by the client to be authorized to practice law in any state or nation the law of which recognizes a privilege against disclosure of confidential communications between client and lawyer.
 ATTACHMENT B 42 C.F.R. § 164.512 e) Standard: disclosures for judicial and administrative proceedings.
(1) Permitted disclosures. A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:
 (i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order; or
 (ii) In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:
 (A) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iii) of this section, from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; or
 (B) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the require-ments of paragraph (e)(1)(v) of this section.
 (iii) For the purposes of paragraph (e)(1)(ii)(A) of this section, a covered entity receives satisfactory assurances from a party seeking protecting health information if the covered entity receives from such party a written statement and accompanying documentation demonstrating that:
 (A) The party requesting such information has made a good faith attempt to provide written notice to the individual (or, if the individual's location is unknown, to mail a notice to the individual's last known address);
 (B) The notice included sufficient information about the litigation or proceeding in which the protected health information is requested to permit the individual to raise an objection to the court or administrative tribunal; and
 (C) The time for the individual to raise objections to the court or administrative tribunal has elapsed, and:
(1) No objections were filed; or
 (2) All objections filed by the individual have been resolved by the court or the administrative tribunal and the disclosures being sought are consistent with such resolution.
 (iv) For the purposes of paragraph (e)(1)(ii)(B) of this section, a covered entity receives satisfactory assurances from a party seeking protected health information, if the covered entity receives from such party a written statement and accompanying documentation demonstrating that:
 (A) The parties to the dispute giving rise to the request for information have agreed to a qualified protective order and have presented it to the court or administrative tribunal with jurisdiction over the dispute; or
 (B) The party seeking the protected health information has requested a qualified protective order from such court or administrative tribunal.
 (v) For purposes of paragraph (e)(1) of this section, a qualified protective order means, with respect to protected health information requested under paragraph (e)(1)(ii) of this section, an order of a court or of an administrative tribunal or a stipulation by the parties to the litigation or administrative proceeding that:
 (A) Prohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested; and
 (B) Requires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding.
 (vi) Notwithstanding paragraph (e)(1)(ii) of this section, a covered entity may disclose protected health information in response to lawful process described in paragraph (e)(1)(ii) of this section without receiving satisfactory assurance under paragraph (e)(1)(ii)(A) or (B) of this section, if the covered entity makes reasonable efforts to provide notice to the individual sufficient to meet the requirements of paragraph (e)(1)(iii) of this section or to seek a qualified protective order sufficient to meet the requirements of paragraph (e)(1)(iv) of this section.
(2) Other uses and disclosures under this section. The provisions of this paragraph do not supersede other provisions of this section that otherwise permit or restrict uses or disclosures of protected health information.
[1] K.S.A. 74-5301 et seq.
[2] Morra v. State Board of Examiners, 212 Kan. 103 (1973).
[3] K.S.A. 74-5324.
[4] An administrative agency has that authority which is expressly granted or necessarily implied. Pork Motel, Corp. v. Kansas Department ofHealth and Environment, 234 Kan. 374 (1983); Cline v. Meis,21 Kan. App. 2d 622 (1995).
[5] In relation to an investigation initiated without a client's complaint, authorization or support, we note the following from a Maryland case: "Second, appellants argue that patient A's records should not be disclosed because she has not complained about Dr. K.'s behavior. If a patient's complaint were necessary for the Board to investigate, there would never be full investigations in cases where the doctor was able to persuade the patient not to complain. The argument has no merit."Dr. K. v. State Board of Physician Quality Assurance, 632 A.2d 453, 457
(Md. 1994).
[6] Id. at 457.
[7] "In all matters pending before the behavioral sciences regulatory board, the board shall have the power to issue subpoenas, compel . . . the production of any papers, books, accounts, documents . . . ." K.S.A.74-7508.
[8] K.S.A. 74-7508, as amended by L. 2001, Ch. 154, § 1(b)(1).
[9] Id.
[10] K.S.A. 74-7508, as amended by L. 2001, Ch. 154, § 1(b)(2).
[11] K.S.A. 74-7508, as amended by L. 2001, Ch. 154, § 1(c).
[12] K.S.A. 74-7508, as amended by L. 2001, Ch. 154, § 1(d).
[13] K.S.A. 65-2839a.
[14] Matter of Collingwood Grain, Inc., 257 Kan. 237, 254-55 (1995), quoting Atchison, Topeka and Santa Fe Railroad v. Lopez, 216 Kan. 108, Syl. ¶¶ 6 and 7 (1975), Yellow Freight System, Inc. v. KansasCommission on Civil Rights. 214 Kan. 120, Syl. ¶ 4 (1974), andKansas Commission on Civil Rights v. Carlton, 216 Kan. 735, Syl. ¶ 7 (1975).
[15] Id. at 255.
[16] Id. at 256, quoting Cessna Aircraft Co. v. Kansas Commissionon Civil Rights, 229 Kan. 15, 28 (1981).
[17] Id. at 256.
[18] K.S.A. 2000 Supp. 74-5323. This confidential and privileged communication statute is identical to that for licensed masters level psychologists, licensed clinical psychotherapists (K.S.A. 2000 Supp.74-5372), licensed master social workers, licensed clinical specialist social workers (K.S.A. 2000 Supp. 65-6315), licensed professional counselors, and licensed clinical professional counselors (K.S.A. 2000 Supp. 65-5810). Thus, much of this opinion pertains to those licensed professionals as well as to psychologists.
[19] In the Interest of K.G.O., 12 Kan. App. 2d 7, 11 (1987).
[20] See Comment to Kansas Supreme Court Rule 1.6.
[21] The Disciplinary Administrator is the investigative and prosecutorial arm of lawyers' licensing entity, the Kansas Supreme Court.See Kansas Supreme Court Rule 205.
[22] K.S.A. 60-426. See Attachment A.
[23] Comment to Rule 1.6.
[24] Bond v. Allbin and Jackson, No. 85,065, Kansas Court of Appeals (Decided Dec. 22, 2000. Previously filed as an unpublished opinion, the Supreme Court granted a motion to publish by an order dated June 12, 2001, pursuant to Rule 7.04).
[25] In the Matter of McIntosh, 259 Kan. 532 (1996).
[26] K.A.R. 102-1-10(b)(14).
[27] Abbott v. Kansas Board of Examiners in Optometry, 268 Kan. 739
(2000), quoting Anderson v. Board of Medical Examiners, 770 P.2d 947
(Ore. 1989).
[28] In re Board of Medical Review Investigation, 463 A.2d 1373
(R.I. 1983).
[29] Atkins v. Guest, 158 Misc.2d 426, 431 (N.Y.S.Ct. 1993)
[30] McMaster v. Iowa Board of Psychology Examiners, 509 N.W.2d 754,757 (Iowa 1993) (emphasis original). In accord Wood v. Board of MedicalQuality, 166 Cal.App.3d 1138 (1985).
[31] In the Matter of A-85-04-38, 525 N.Y.S.2d 479, 481 (1988).
[32] Id.
[33] Alter v. New York State Department of Health, State Board forProfessional Medical Conduct, 546 N.Y.S.2d 746, 7748 (1989). See alsoColorado State Board of Medical Examiners, 984 P.2d 670 (Colo. 1999) andFagan v. Department of Professional Regulation, 534 So.2d 802 (Fl. 1988)
[34] "We believe when a claim of privilege, confidentiality or irrelvance is raised the court has a duty to conduct an in camera
inspection to separate and permit discovery of only the relevant documents, thereby protecting against unnecessary and damaging disclosure of irrelevant confidential material." Berst v. Chipman, 232 Kan. 180, 187
(1982).
[35] K.S.A. 74-5324.
[36] K.S.A. 74-5324(d).
[37] K.A.R. 102-1-10(b)(9) (emphasis added).
[38] 42 U.S.C. § 290ee-3.
[39] 42 C.F.R. Part 2.
[40] 42 C.F.R. § 2.3. An alcohol or drug abuse program is considered to be federally assisted if (1) it is conducted in whole or in part, whether directly or by contract or otherwise by any department or agency of the United States or (2) it is carried out under a license, certification, registration, or other authorization granted by any department or agency of the United States. See42 C.F.R. § 2.12(b).
[41] 42 C.F.R. § 2.13.
[42] 42 C.F.R. § 2.31 to 2.35.
[43] 42 C.F.R. § 2.51 (for medical emergencies), 2.52 (for research activities) and 2.53 (for audit and evaluation activities).
[44] 42 C.F.R. § 2.61 through 2.67.
[45] 42 C.F.R. § 2.61(a).
[46] 42 C.F.R. § 2.66.
[47] 42 C.F.R. § 2.64(d)
[48] See e.g., State Board of Medical Examiners v. Fenwick Hall, Inc.,419 S.E.2d 222 (S.C. 1992) and In re The August, 1993 Regular GrandJury, 854 F. Supp. 1380 (S.D.Ind. 1994).
[49] 42 C.F.R. § 160 et seq. and 42 C.F.R. § 164 et seq.
[50] "Health care provider" includes any person or organization who furnishes, bills, or is paid for health care in the normal course of business. 42 C.F.R. § 160.103.
[51] 42 C.F.R. § 164.104.
[52] 42 C.F.R. § 160.103.
[53] 42 C.F.R. § 164.502.
[54] 42 C.F.R. § 164.502.
[55] 42 C.F.R. § 164.512(e). The other circumstances for which uses and/or disclosure is authorized under this subsection are as required by law, for public health activities, about victims of abuse, neglect or domestic violence, for health oversight activities, for law enforcement purposes, about decedents, for cadaveric organ, eye or tissue donation purposes, for research purposes, to avert a serious threat to health or safety, for specialized government functions, and for workers' compensation. 42 C.F.R. § 160.512(a) through (l).
[56] 42 C.F.R. § 164.512. See Attachment B for specific details.
[57] 42 C.F.R. § 164.508(a).
[58] 42 C.F.R. § 164.512(a).
[59] 42 C.F.R. § 164.501.